

**SO ORDERED.**
**SIGNED this 27th day of September, 2012**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

In re:

DRAGAN NMN LAZAREVIC,

       Debtor;

ZIVORAD ADAMOVIC, as next friend and as
natural parent of ALEX ADAMOVIC and
FILLIP ADAMOVIC, minors,

       Plaintiff

v

DRAGAN LAZAREVIC,

       Defendant.

No.   11-10585
Chapter 7

Adversary Proceeding
No.   11-1048

1

## MEMORANDUM

The plaintiff Zivorad Adamovic, as next friend and as natural parent of Alex Adamovic and Fillip Adamovic, minors ("Minors") has filed a complaint in this adversary proceeding. [Doc. No. 1, Complaint].[1]  The Complaint objects to the discharge of the defendant debtor, Dragan NMN Lazarevic ("Debtor" or "Defendant"), pursuant to 11 U.S.C. § 727 and objects to dischargeability of certain debts pursuant to 11 U.S.C. § 523. It also seeks relief from the automatic stay to continue an action filed in the Circuit Court of Hamilton County, Tennessee ("Tennessee State Case").[2]  The trial is currently scheduled for November 6, 2012. [Doc. No. 55]. The Defendant has filed a motion for summary judgment. [Doc. No. 59]. The Plaintiff has filed a response to the motion for summary judgment. [Doc. No. 68].

The court has reviewed the motion, the briefing of the parties, the record, and the applicable law and now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. For the reasons explained *infra*, the court determines that the Defendant's motion for summary judgment will be GRANTED in part and DENIED in part. The court finds that genuine issues of material fact exist, including whether the Debtor is entitled to a discharge or whether the Debtor's sister created a trust which imposed on the Debtor a fiduciary duty to the Minors represented by the Plaintiff.

---

1  All docket entry references refer to docket entries pertaining to Adversary Proceeding No. 11-1048, unless otherwise noted.

2  The court set a hearing on the motion for relief from the automatic stay for June 2, 2011. [Doc. No. 8]. The motion was withdrawn on May 26, 2011 (Doc. No. 12), leaving only the objection to discharge based on §§ 727(a)(2), (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), and § 523(a)(4). The Complaint was later amended to add claims of nondischargeability under §§ 523(a)(2) and (a)(4).

## I.      Background Facts

The Debtor asserts that the material facts in this adversary proceeding are undisputed. The Plaintiff disagrees. The court has reviewed the record and finds that the parties agree on very few of the pertinent facts of this proceeding. However, the court will attempt to summarize the undisputed facts and will note where the parties disagree on the relevant issues.

### A.      The Undisputed Facts

In their statements of undisputed facts, the parties agree that Slobodanka Lazarevic ("Danka") was the Debtor's sister and the Minors' mother. Danka was married to the Plaintiff, Mr. Adamovic. *See* [Doc. Nos. 64, 66, Debtor's Statement of Alleged Undisputed Facts and Plaintiff's Responses]. Grozdana Lazarevic ("Donna") is the Debtor's sister. The parties further agree that Danka and the Plaintiff had two children together, the Minors, and that the couple divorced in November of 2003. *Id.* They both agree that Danka loved her sons more than anything in the world. [Doc. No. 77, Defendant's Reply to Plaintiff's Statement of Undisputed Facts].

They agree that in 2006 Danka suffered a reoccurrence of cancer and that "[o]n the morning of June 22, 2006 Danka, Donna and Dragan went to see Dr. Arrowsmith [Danka's physician] for the last time as there was nothing else for him to do for Danka." [Doc. Nos. 64, 66, Debtor's Statement of Alleged Undisputed Facts No. 7 and Plaintiff's Response]. Following the appointment with Dr. Arrowsmith, the three siblings went to Warranty Title. *Id.*, Statement Nos. 8, 9 and Responses.

The Debtor filed his Chapter 7 voluntary bankruptcy petition on February 4, 2011. [Bankr. Case No. 11-10585, Doc. No. 1]. The Plaintiff, representing the Minors, filed this adversary proceeding on April 27, 2011. [Doc. No. 1, Complaint]. At the time of the filing of his bankruptcy

petition, the Debtor was a defendant in the Tennessee State Case filed by the Plaintiff in Hamilton

County Circuit Court alleging fraud, conspiracy, deceit, undue influence, breach of fiduciary duty

and breach of trust. The Complaint alleges that the Debtor wrongfully acquired and converted

most of the assets and personal property belonging to Danka. The parties agree that Danka was

terminally ill during the spring and summer of 2006. She owned her home subject to a mortgage,

the furnishings in that home, a car, an IRA containing approximately $8000, a bank account with

$600, and jewelry and personal items. The parties agree that the Minors received only some of the

furnishings. With respect to the other assets, it appears that the Debtor, her brother, received most

of the other assets or their proceeds. The parties dispute most of the remaining facts.

### B.    Disputed Facts

The Complaint alleges:

> While Danka was literally on her death bed, suffering from terminal cancer and
> heavily medicated, the Debtor drafted and persuaded Danka to sign documents
> which transferred virtually all Danka's assets to him, including: Her home at 1901
> Payne Road valued at $299,000.00; her 401(k) valued at $12,000.00; and her car,
> jewelry and furniture valued at $41,500.00. It is alleged that Danka signed the
> quitclaim deed in reliance upon Debtor's promise—which he never intended to
> keep—to hold the properties and proceeds in trust for the benefit of her minor
> children and legal heirs, Alex and Fillip. On June 30, 2006—eight (8) days after she
> signed the quitclaim deed—Danka died intestate. Instead of using the property and
> proceeds for the benefits of the children, Debtor used the property and/or proceeds
> of the property for his personal use.

Complaint, p. 2.

The Plaintiff asserts that the Tennessee State Case is not seeking to recover assets of the

Debtor's bankruptcy estate, but rather seeks to recover assets of the Minors' mother's estate.

Complaint, p. 3. The Plaintiff contends that therefore any judgment resulting from the Tennessee

State Case is not subject to discharge as it would not be an asset of the bankruptcy estate. *Id.* The

Complaint asserts that in the alternative, the Debtor should be denied a discharge pursuant to 11

U.S.C. §§ 727(a)(2), (a)(3), (a)(4), (a)(5), (a)(6), and (a)(7). *Id.* at p. 3. The Complaint also asserts

that any debt determined to be owed to the Minors should be nondischargeable pursuant to 11

U.S.C. § 523(a)(4). *Id.* at p. 4. The Plaintiff recently moved to amend his Complaint to add two

claims pertaining to nondischargeability pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6). [Doc.

No. 57]. The court has granted the Plaintiff's motion to amend. [Doc. No. 72].

The Debtor contends that his sister, Danka, deeded him her house as a gift in gratitude or in

repayment of funds he had loaned her over the years. He further contends that there is no evidence

that a trust was created or that he ever represented he would or did act in a fiduciary capacity on

behalf of the Minors, his nephews. Therefore, he asserts, he never owed the Minors any money that

he received from the sale of her home or any other asset. He further contends that Danka gave him

or Donna her other assets, including her IRA account and her car. With respect to Danka's

furnishings, the Debtor gave the Plaintiff and the Minors unrestricted access to Danka's home to

retrieve whatever they wanted. Whatever furniture remains in his possession is still in her

testamentary estate. The court will address the disputes separately.

### 1.   Disputes Over Danka's Decision to Sign a Quitclaim Deed Giving the Debtor Survivorship Rights in Her Home

The Debtor claims that in 2005 Danka had asked Warranty Title to have a quitclaim deed

drafted pertaining to her house at 1901 Payne Road in Chattanooga, Tennessee. He asserts that

Danka created the quitclaim deed to convey her home to Debtor, but that he had the deed destroyed

because he did not want to "give up my sister's death," in other words "give up on her life." [Doc.

No. 64, Statement No. 10]; [Doc. No. 65-1, Deposition of Dragan Lazarevic ("Dragan Dep."), pp.

24-25]. The Debtor further presents the affidavit of an employee of Warranty Title, Sonya

5

Crawford, who asserts that:

> [o]n or about March 17, 2005, Ms. Slobodanka Lazarevic and her sister, Ms. Donna
> Lazarevic came into my office. At that time, Ms. Slobodanka Lazarevic asked me
> to prepare a Quitclaim Deed to transfer her property from her sole name to her
> name and her brother's name, with right of survivorship. I prepared the document,
> witnessed and notarized her signature.

[Doc. No. 60, Affidavit of Sonya R. Crawford ("Crawford Aff."), ¶ 1].

The Plaintiff disagrees that Danka ever created a quitclaim deed conveying the property to

the Debtor in 2005. In opposition to the motion for summary judgment, Plaintiff has provided an

affidavit from the manager of Warranty Title Company. [Doc. No. 65-8, Affidavit of Patty Martin

("Martin Aff.")]. In her affidavit, the manager asserts that "Warranty Title has no file or record of

a quit claim deed dated March 17, 2005, pertaining to the property at 1901 Payne Road." Martin

Aff., ¶ 6. The Debtor admitted in his deposition that he has no copy of the 2005 quitclaim deed.

Dragan Dep., p. 25.

The Debtor asserts that on June 22, 2006 Danka executed another quitclaim deed

("Quitclaim Deed") at Warranty Title that transferred ownership of her home at 1901 Payne Road

from her to her and Debtor with right of survivorship. [Doc. No. 64, Statement No. 11]. The

Plaintiff agrees that Danka signed the Quitclaim Deed at Warranty Title on June 22, 2006 that

transferred ownership of her home from her to her and Debtor with right of survivorship. [Doc.

No. 66, Response to Statement No. 11]; [Doc. No. 59-1, Quitclaim Deed]. However, the parties

dispute how the Quitclaim Deed was prepared and who prepared it, whether Danka was competent

to sign it, and whether it was in furtherance of creating a trust.

In his deposition the Debtor contends that Ms. Crawford or someone else at Warranty Title

prepared the Quitclaim Deed. Dragan Dep., p. 32. The Plaintiff disputes this contention and notes

that the Quitclaim Deed itself indicates that is was prepared by "Dragan Lazarevic." [Doc. No.

59-1, Quitclaim Deed].

The Plaintiff has further provided information regarding the Quitclaim Deed from the

manager of Warranty Title. She states in her affidavit:

> I have reviewed the quit claim deed dated June 22, 2006 attached hereto as Exhibit
> "A," by which the property located at 1901 Payne Road, Chattanooga, Tennessee,
> was transferred from Slobodanka Lazarevic to Slobodanka Lazarevic and Dragan
> Lazarevic as co-owners with right of survivorship. Warranty Title has no file or
> other record of this transaction. Standard operating procedure called for a file to be
> opened on all deeds prepared by Warranty Title Company. Warranty Title
> maintains files for 7-20 years, so if a file had been opened, it would still be
> available.
>
> I was not involved in the making or signing of the attached quit claim deed. The
> first I knew of the transaction was in 2011 when I was asked by Sonya Crawford to
> notarize her signature on an affidavit about it. I did notarize her signature. I do not
> know if anything in the affidavit is true (or false), only that Sonya Crawford swore
> it was true.
>
> The quit claim deed appears to be on a "form" of the type that we use at Warranty
> Title. However, our forms come up on the computer with the name and address of
> Warranty Title in the space entitled "THIS INSTRUMENT WAS PREPARED
> BY." The attached quit claim deed dated June 22, 2006 shows that it was prepared
> by "Dragan Lazarevic." If the quit claim deed was, in fact, created at Warranty Title
> on one of our computers, someone had to manually and intentionally delete
> Warranty Title's name and address and insert that of Dragan Lazarevic.

Martin Aff., ¶¶ 3-5. In addition, although Debtor testified that he signed the Quitclaim Deed, his

signature does not appear on the copy of the Quitclaim Deed provided to the court. Dragan Dep., p.

31; Quitclaim Deed.

The Debtor asserts that when Danka signed the Quitclaim Deed on June 22, 2006, she

"appeared to be of clear and sound mind, and not under duress, fraud or undue influence."

Crawford Aff., ¶ 3. The Debtor further contends that "[o]n June 22, 2006 Danka could walk

unassisted, did not need a wheelchair, could see out of both eyes, got out of bed by herself and

7

could dress herself." [Doc. No. 64, Debtor's Statement of Undisputed Facts, Statement No. 13].

The Plaintiff again disagrees with this assessment. He notes that Plaintiff had a brain tumor on that date which would cause her death 8 days later. According to her medical records on that day, Danka was "completely wheelchair bound" and could not see. [Doc. No. 65-5, Ex. 5, p. 3]. She was also "[p]ositive for fatigue and feeling bad physically" and was also "[p]ositive for change in vision, eye pain, hearing problems, sore mouth, and trouble swallowing." *Id.* She was experiencing "arm pain, leg pain, neck pain, and joint pain, " as well as experiencing "withdrawal, anxiety, and troubling thoughts." *Id.* She was a "woman obviously doing poorly." *Id.*

Danka's hospice records from June 22, 2006 indicate that she was suffering from "[i]ncreasing generalized weakness and left side loss of control or use due to brain involvement. Unable to walk since Sunday." [Doc. No. 65-4, Ex. 4, p. 6]. Her speech was "at times difficult to understand due to language barrier and possible effects of disease. . . ." *Id.* In addition, the hospice registered nurse indicates in her affidavit that Danka had been receiving morphine sulfate 15 mg twice a day prior to the nurse's visit on June 22, 2006. [Doc No. 65-7, Ex. 7 Affidavit of Diane Case ("Case Aff."), p. 4, ¶ 9].

The records show that Danka purchased the home at 1901 Payne Road on November 25, 2003 for a purchase price of $199,900.00. [Doc. No. 65-1, p. 114, Ex. 12 to Dragan Dep.]. The parties agree that the amount financed was $189,900. [Doc. No. 66, Statement of Undisputed Facts and Responses, Statement No. 20]. Although the Debtor asserts that he provided Danka with $1,000 for earnest money and with the majority of $15,973.45 in closing costs, the Plaintiff disagrees with Debtor's assertion. The Debtor testified in his deposition that he provided his sister with earnest money for the purchase and with the majority of the closing costs. Dragan Dep., pp.

8

57-58. The Plaintiff disagrees, noting that the Debtor admits that he has no record of providing Danka with either the earnest money or with any money for closing costs. *Id.* In addition, only Danka is listed as the purchaser of the home, and the check for the closing costs is made out in only Danka's name. [Doc. No. 65-1, Exs. 12 and 13 to Dragan Dep., pp. 115-116].

The Debtor contends in his deposition that he paid Danka's mortgage payments and living expenses, and so she wanted to give him the house as a "gift" to compensate him for the money he had provided her. Dragan Dep., pp. 27-29. However, he admits he has no records of any of the money he provided to Danka and asserts that he provided her only with cash. *Id.* at p. 30. He has provided no evidence of an obligation from Danka to him for these alleged payments. The Plaintiff contends the transfer was only a part of a plan to put assets in the Debtor's name in furtherance of a trust. Plaintiff's support to this position is discussed in more detail in Part 5 *infra*.

### 2.    Disputes Over Disposition of Danka's Personal Assets

The parties also dispute the nature of Danka's other personal assets. The Debtor asserts that when Danka died, her only personal assets were a "Bedroom Set, Living Room, Dining Room, Boy's Bedrooms, Guest room, some jewelry." [Doc. No. 64, Debtor's Statement of Undisputed Facts, Statement No. 23]. The Plaintiff disagrees. He notes that Danka insured the contents of her home for $159,000, and he has provided the court with a copy of her home insurance policy. *See* [Doc. No. 65-1, pp. 117-118, Ex. 14 to Dragan Dep.].

The Plaintiff and one of the Minors, Alex, also both testified about the significant amount of gold jewelry that Danka possessed. *See* [Doc. No. 65-2, Deposition of Zivorad Adamovic ("Z. Adamovic Dep."), p. 32; Doc. No. 65-3, Deposition of Alex Adamovic ("A. Adamovic Dep."), p. 3]. The Plaintiff testified that Danka had "gold jewelry" and "jewelry from her grandma . . .

9

jewelry where I bought her . . . jewelry since she was a girl . . ., and she had jewelry from when we got together." Z. Adamovic Dep., p. 32. He speculated that it was more than thirty pieces of jewelry. *Id.* Alex Adamovic corroborated the Plaintiff's story, noting that his mother had "at least over 30 pieces of jewelry" and "a lot of gold jewelry" in a "very big jewelry box." A. Adamovic Dep., p. 3. He testified that his mother "used to love how much jewelry she had." *Id.*

With respect to the Plaintiff's claim that the Debtor did not allow the Minors to retrieve their mother's personal furniture or belongings, the Debtor asserts that the Plaintiff had "full access" to Danka's house following her death and retrieved "whatever he wanted" of her personal belongings. [Doc. No. 64, Statement of Undisputed Facts, Statement No. 24]; Donna Aff., ¶ 7. The Plaintiff again disagrees with this material fact. He claims that he and the Minors never went into Danka's house following her death and that a few small items, including dressers and a small television set were left on the porch for them to retrieve. They never received other property, such as jewelry or other furniture. [Doc. No. 66, Plaintiff's Responses to Debtor's Statement of Undisputed Facts, Responses to Statement Nos. 24-26]; Z. Adamovic Dep., pp. 26, 30. The Plaintiff contends that the Debtor also took Danka's car which she intended to be held in trust for the Minors.

### 3.   Disputes Over Danka's Decision to Provide Debtor with Her IRA Account Assets

The Plaintiff further contends that Danka's assets included money in a checking account that the Debtor obtained by writing a check with his sister's signature several months after her death. [Doc. No. 65-1, pp. 127-130, Exs. 17-19 to Dragan Dep.]. Plaintiff also notes that Danka had an IRA worth $7,711.73 which she withdrew and provided to Debtor on June 26, 2006. [Doc. No. 65-1, pp. 136-41, Ex. 21 to Dragan Dep.]. The Debtor's checking account records indicate that

10

he deposited $8,075 into his checking account on June 29, 2006, although in his interrogatory responses he claims that he never received any money from Danka's IRA. [Doc. No. 65-1, Exs. 21, 22 to Dragan Dep., pp. 136-144].

The Plaintiff asserts that Danka was not competent to make financial decisions on June 26, 2006 based on her hospice records. [Doc. No. 65-4, pp. 10-14]. Those records indicate that Danka was already in the "dying process" on June 26, 2006. *Id.* at p. 12. She was further experiencing hallucinations and was only able to make "simple choices about what she does and doesn't want," with only an ability to "think through other, more complicated things. . . ." *Id.* at p. 11. At that time the family wanted to obtain the services of an attorney to help Danka create a will, but it was unclear whether "she had the capacity to complete those directives." *Id.*

The Debtor asserts that Danka transferred her IRA funds to him for use in paying for her funeral. [Doc. No. 64, Debtor's Statement of Undisputed Facts, Statement No. 28]; [Doc. No. 62, Affidavit of Grozdana "Donna" Lazarevic ("Donna Aff."), ¶ 6]. The Plaintiff claims that on June 26, 2006 when Danka withdrew her IRA funds, deposited them in her checking account and then wrote a check to the Debtor, she was incompetent due to her illness. He relies on hospice records pertaining to Danka's medical condition at that time. [Doc. No. 65-4, Ex. 4].

### 4.      Disputes Over the Disposition of Danka's Car

The parties also disagree about what Danka's intentions were with respect to her vehicle, a Hyundai Sonata. Although the Debtor contends that Danka gave her sister Donna her car, the Plaintiff asserts that Danka never transferred title to the vehicle to either Debtor or Donna and that Debtor sold the car and took the money from the sale. The Plaintiff also asserts that the Debtor has never produced any records providing insight on the proceeds received from the sale of the car. *See*

11

Dragan Dep., p. 34.

### 5.    Disputes over the Existence of a Trust for the Minors

Perhaps most importantly for purposes of this motion, the parties disagree regarding the material fact of whether a trust existed and whether Debtor was acting as a fiduciary on behalf of the Minors pursuant to such a trust. The Debtor contends that there "are no written trust documents regarding the transfer of ownership between Danka and Dragan." [Doc. No. 64, Debtor's Statement of Undisputed Facts, Statement No. 35]. He asserts that the "only three reasons that the Plaintiffs believe that there is a trust is because 1) They state that Danka told Alex and Fillip; 2) They state that Danka told Zivorad; and 3) That Donna approached Zivorad indicating that there was a trust." *Id.* at Statement No. 36. The Debtor has provided an affidavit of Donna Lazarevic in which she denies ever telling the Plaintiff or the Minors that Danka intended to create a trust for the Minors' benefit. Donna Aff., ¶¶ 4-5. Donna states in her affidavit that:

> [a]fter the last doctor's visit when she was told that there was nothing more to be done, at her insistence we went with our brother Dragan Lazarevic to have a title company prepare a quit claim deed adding him to the title on her home. She had tried to transfer the home to my brother about a year earlier but he refused to accept the house at that time. It was her idea to transfer the home to him and he never encouraged the transaction. At no time was there ever a discussion or promise regarding holding her home in trust or for the benefit of her children. My sister knew what she was doing at the time of the transfer and was of sound mind.

Donna Aff., ¶ 10.

Despite Donna's assertions to the contrary, the Plaintiff contends that there is evidence that an oral trust existed and that Danka entrusted the Debtor to hold her home in trust for the Minors. He provides the affidavit of the hospice registered nurse who cared for Danka during her critical final days, as well as the records the nurse created at the time of Danka's care to document the care provided to Danka and her family. The nurse's medical records indicate that on June 22, 2006, the

12

day that Danka signed the Quitclaim Deed, the nurse noted that "[t]he family is very concerned

[Danka] bought a nice home last year and the brothers [sic] name is also on the deed. The family

wishes for a trust to be set up for the children and the father of the children not have access to the

money, set aside for the children." [Doc. No. 65-4, p. 6]. The hospice nurse noted that terminal

issues included "need for legal paper work to protect children and finances for their future,

brotherd [sic] denial and control, patients [sic] denial and short expected time frame." *Id.* at p. 7.

The nurse noted that "no one has a POA [Power of Attorney] for pt [patient] or access to her

accounts as she has been very independent and saw no reason to give over control." *Id.* at p. 9.

Based on her notes, the hospice nurse recalled her conversation with Danka's family that

was summarized in the medical records. In her affidavit she testifies:

> I understood from the conversation with Danka, Donna and [Debtor]: (a) that
> Danka was concerned about the financial well-being of her sons; (b) that all three
> family members wanted the patient's property to be put in trust for the benefit of
> Danka's sons in such a way that the boys' father (i.e. Danka's ex-husband) did not
> have access to that property; and (c) that [Debtor's] name had been put on the deed
> to Danka's house in furtherance of this trust arrangement.

[Doc. No. 65-7, Affidavit of Diane Case ("Case Aff."),¶ 6]. In one of his responses to

interrogatories propounded to the Debtor during the course of the Tennessee State Case, the

Debtor responded to Plaintiff's question regarding conversations the Debtor had with Danka

regarding her wishes for the disposition of her assets following her death. [Doc. No. 65-1, Ex. 10 to

Dragan Dep., pp. 109-110]. The Debtor responded that Danka "would her assets given to her sons,

however, once the obligations she had were satisfied [sic]." *Id.*

The Plaintiff also notes that the Debtor sold the house to his business associate, David

Collins, on February 15, 2007 for $299,000. [Doc. No. 65-1, pp. 147-153, Exs. 24, 25, 27 to

Dragan Dep.]. The U.S. Department of Housing and Urban Development ("HUD") settlement

statement pertaining to the sale indicates that the Debtor received $57,021.17 upon the closing of

the sale. *Id.* at p. 151. The Debtor also signed the settlement statement acknowledging that he also

received $29,900 in earnest money from Mr. Collins. *Id.* at pp. 151-153. The settlement statement

includes a warning that indicates that "[i]t is a crime to knowingly make false statements to the

United States on this or any other similar form. Penalties upon conviction can include a fine and

imprisonment." *Id.* at p. 153. The Debtor now asserts that he never received the earnest money of

$29,900 from Mr. Collins, despite his representations to the contrary on the HUD settlement

statement. Dragan Dep., p. 85. The Plaintiff also contends that the Debtor did not inform him or the

Minors about the sale of the home, nor did he report the sale of the house on his 2007 Federal

Income Tax Return. *See* [Doc. No. 65-1, Ex. 7 to Dragan Dep., pp. 94-106].

The parties agree that the Debtor filed for probate and listed himself as an heir of Danka's

estate on February 6, 2009—years after Danka's death and after the Plaintiff filed the Tennessee

State Case. [Doc. No. 65-1, p. 119, Exhibit 15 to Dragan Dep.]. The Plaintiff's Amended

Complaint asserts claims for denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4),

(a)(5), (a)(6), and (a)(7) and for nondischargeability pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and

(a)(6).

## II.   Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56

applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is

appropriate if there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show

conclusively that no genuine issue of material fact exists, and the Court must view the facts and all

14

inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec. 7, 2011).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

## III.    Analysis

### A.    Admissibility of Evidence Submitted by Parties Regarding Summary Judgment Motion

Preliminarily, the court will address some evidence issues raised by the parties. On September 18, 2012 this court heard oral argument regarding the Debtor's motion for summary judgment. Although neither party moved to strike portions of evidence submitted into the record on the motion for summary judgment, the parties raised the possibility that some of the evidence submitted in support of and in opposition to the Debtor's motion for summary judgment is inadmissible hearsay. The Debtor specifically questioned the Plaintiff's submission of the hospice records and the affidavit of the hospice nurse, as well as deposition testimony by the Plaintiff and one of the Minors. This court then noted that if the Plaintiff's deposition statements contain

15

hearsay, then Donna's affidavit might also contain hearsay statements of Danka.

The court recognizes that materials submitted in support of or in opposition to a motion for summary judgment must be evidence that would be admissible at trial. Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In addition, Rule 56(c)(2) states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, the court concludes that hearsay exceptions apply to the evidence alleged to be inadmissible.

With respect to the statements in the Plaintiff's and one of the Minor's depositions indicating that Danka confirmed the existence of a trust to both the Plaintiff and her son, the court finds that these statements fit the hearsay exception found in Federal Rule of Evidence 803(3). This rule also applies to the statements regarding what Danka told Donna regarding her intentions and wishes that are described in Donna's Affidavit, Doc. No. 62. The Rule states:

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Fed. R. Evid. 803(3). Courts in this Circuit have determined that statements by a decedent to another regarding the decedent's intentions pertaining to such issues as altering the beneficiary of a life insurance policy fit the hearsay exception outlined in Rule 803(3). For example, in *Genworth Life Ins. Co. v. Oliver*, the district court found that Rule 803(3) applied to admit the

16

"uncontroverted affidavits from decedent's family members and close friend that decedent

remained emotionally and mentally strong through the end of her life and that her decision to

change her beneficiary was based on rational thought and consideration." No. 11-14531, 2012 WL

4048875, at *4 (E.D. Mich. Aug. 9, 2012). The court concluded that "[w]hile some of the affiants

relate statements made to them by the decedent, the Court believes this information is admissible

under Federal Rule of Evidence 803(3) as evidence of the decedent's state of mind." *Id.* at n.3. *See*

*also, Swedish Match North America, Inc. v. Tucker*, No. 4:09-cv-00068-M, 2010 WL 2721875, at

*5 (W.D. Ky. July 8, 2010) (finding that hearsay statement by decedent regarding his intent to

change his retirement plan beneficiary fit "state of mind" exception in Rule 803(3) as statement of

the decedent's "intent"); *Staelens ex rel. Estate of Staelens v. Staelens*, 677 F.Supp.2d 499, 503 (D.

Mass. 2010) (finding that decedent's statements regarding intent to retain current beneficiary on

401(k) account fit Rule 803(3)'s exception to hearsay rule). The court thus concludes that

Plaintiff's, her son's, and Donna's assertions regarding what Danka told them her intentions were

for her assets after her death all fit the state of mind exception in Rule 803(3).

With respect to the hospice records submitted by the Plaintiff indicating Danka's intent to

create a trust, Doc. No. 65-4, the court concludes that these are admissible under the business

records exception to the hearsay rule, Rule 803(6), as well as the "state of mind" exception in Rule

803(3). This business records exception states that the following is admissible as an exception to

the hearsay rule:

> A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by—or from information transmitted
> by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business,
> organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;

(D) all of these conditions are shown by the testimony of the custodian or another
qualified witness, or by a certification that complies with Rule 902(11) or (12) or
with a statute permitting certification; and
(E) neither the source of information nor the method or circumstances of
preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

In *Bondie v. BIC Corp.* the Sixth Circuit addressed the admissibility of a social worker's

report in a dispute involving the cause of a house fire that severely injured several inhabitants and

caused significant property damage. 947 F.2d 1531 (6th Cir. 1991). The social worker's report

contained a statement that "three-year-old girl admitted for burns after a house fire she

accidentally started with matches." *Id.* at 1534 n.2. The Sixth Circuit concluded that the "contested

report is properly considered within the business-record exception to the hearsay rule inasmuch as

it was made in the scope of the social worker's employment and writing such reports was part of

the social worker's 'regularly conducted activity.'" *Id.* at 1534. It also held that the report was

admissible due to the combined effect of Fed. R. Evid. 801(d)(2)(A), an opposing party's

statement, and Fed. R. Evid. 803(6). *Id.* The Court noted that it has held that a:

Report must satisfy only four requirements to be excepted from the hearsay rule:
(1) it must have been kept in the regular course of a regularly conducted business
activity; (2) it must have been kept in the regular course of that business; (3) the
regular practice of that business must have been to have made the memorandum;
and (4) the memorandum must have been made by a person with knowledge of the
transaction or from information transmitted by a person with knowledge.

*Id.* (citing *Redkin Laboratories v. Levin*, 843 F.2d 226, 229 (6th Cir.), cert. denied, 488 U.S. 852,

109 S.Ct. 137 (1988)).

The court concludes that the hospice records meet these four requirements. In her affidavit,

Ms. Case states that:

[m]y notes pertaining to the patient's social and financial situation—and the notes

18

> of the social workers assigned by Hospice—are recorded primarily for medical
> treatment of the patient. Hospice of Chattanooga treats the whole person as part of
> its end-of-life care. Social and financial stressors are pertinent to the patient's
> mental and emotional condition, which Hospice of Chattanooga is treating in
> addition to physical pain.

Case Aff., ¶ 7. The records were recorded in the course of Hospice of Chattanooga's treatment of

Danka. They are part of the regular course of treatment for the hospice and are part of the hospice's

regularly conducted business. In addition, Ms. Case was the nurse assigned to the family and had

personal knowledge of the situation between the family members as she was interacting with them

regularly in Danka's final days. The court concludes that the hospice records are within the

hearsay exception under Rule 803(6). The court further concludes that to the extent the hospice

records contain statements by Danka relating to her intent to create a trust, those statements also

satisfy the "state of mind" exception of Rule 803(3).

Finally, the court notes that certain assertions in Ms. Case's affidavit regarding Danka's

intent to create a trust are not hearsay because Ms. Case does not repeat statements made by Danka

to her. She merely indicates what her understanding of Danka, Donna, and Debtor's conversation

regarding the disposition of Danka's assets following her death was. To the extent that any

statements of Danka are included, those would also be covered by the "state of mind" exception in

Rule 803(3). To the extent that the assertions reflect statements by Donna and the Debtor regarding

the Debtor's desire to keep the house and other assets from the Plaintiff and for the Minors, they

constitute an admission against interest or prior inconsistent statements regarding the reason for

putting the house in the Plaintiff's name. *See* Fed. R. Evid. 801(d)(1), 801(d)(2). For these reasons

the court declines to strike any of the evidence presented in support of or in opposition to Debtor's

motion for summary judgment.

**B.    The Plaintiff's Request for a Finding That the Trust Assets Are Not Property of the Estate.**

The Debtor seeks summary judgment on the first count of the Complaint. In that count the Plaintiff alleges that the claims in the pending Tennessee State Case do not seek to recover property of the estate, but rather seek to recover assets that belong to the Minors as a result of Danka's creation of a trust. [Doc. 1, Complaint, p. 3]. The court construes this allegation as a basis for the relief from the automatic stay, which was included originally in the Complaint, but was withdrawn shortly thereafter. It also could be construed to be a request for declaratory relief in the form of a finding that assets remaining in the Debtor's possession derived from Danka in the months before her death are not property of the estate and that a discharge would not extinguish the Minor's claims to those assets.

The specific language of the Complaint states that "the pending Tennessee State Case is not an asset of the Debtor's bankruptcy estate and therefore not subject to discharge by the bankruptcy of Debtor." [Doc. 1, Complaint, p. 3]. The Debtor contends that this allegation is not a basis for denial of a discharge since only liabilities, not assets, are dischargeable. The court finds this argument to be legally correct, but not dispositive of the issue. The court agrees there is no legal basis to "discharge an asset," but the court believes the pleading is seeking a determination of whether a trust existed; and on that point, there is a genuine issue of fact as discussed in Part I.B.5. *supra*. Therefore, the Debtor's motion regarding the Plaintiff's first count will be DENIED.

**C.    The Plaintiff's Section 727 Denial of Discharge Claims**

11 U.S.C. § 727 provides that a debtor shall receive a discharge, except in certain limited circumstances. The Plaintiff asserts that several of those exceptions to the right of discharge apply to the Debtor. The plaintiff must prove the elements of 11 U.S.C. § 727(a) by a preponderance of

20

the evidence, and courts generally construe section 727(a) liberally in favor of the debtor.   *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *see also, Roberts v. Oliver (In re Oliver)*, 414 B.R. 361, 373 (Bankr. E.D. Tenn. 2009).

**1.**      **Section 727(a)(2)**

11 U.S.C. § 727(a)(2)(A) provides:

(a)   The court shall grant the debtor a discharge unless − . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed −
(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition; . . .

11 U.S.C. § 727(a)(2).

In *In re Keeney*, the Sixth Circuit emphasized that § 727(a)(2)(A) encompasses two elements: 1) a disposition of property, such as concealment, and 2) "a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." 227 F.3d at 683 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)). The Sixth Circuit Bankruptcy Appellate Panel has determined that the term "concealment" in § 727(a)(2)(A) "includes the withholding of knowledge of an asset by the failure or refusal to divulge information required by law to be made known." *Buckeye Retirement Co., LLC, LTD. v. Swegan (In re Swegan)*, 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008).

In *Jahn v. Flemings (In re Flemings)* this court had the opportunity to discuss the determination of fraudulent intent through circumstantial evidence, including evidence of "badges of fraud." 433 B.R. 230, 236 (Bankr. E.D. Tenn. 2010). This court recognized the following "badges of fraud":

(i) the lack of adequate consideration for the transfer; (ii) the family, friendship, or close relationship between the parties; (iii) the retention of possessions, benefit, or use of the property in question by the debtor; (iv) the financial condition of the party sought to be charged prior to and after the transaction in question; (v) the conveyance of all of the debtor's property; (vi) the secrecy of the conveyance; (vii) the existence or cumulative effect of a pattern or series of transaction[s] or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (viii) the general chronology of events and transactions under inquiry.

*Id.* (quoting *Gordon v. Courtney (In re Courtney)*, 351 B.R. 491, 500 (Bankr. E.D. Tenn. 2006)).

Whether this court finds the existence of a trust, the Plaintiff has provided evidence that there were a number of assets the Debtor received from his sister that he disputes he still has or that he ever received. The box of gold jewelry is one example. At the oral argument and in his memorandum, Plaintiff also raised the existence of a partnership interest which was not disclosed in his schedules. *See* [Bankr. Case No. 11-10585, Doc. No. 1, p. 17, Schedule B]. The Debtor's counsel admitted during oral argument on the Debtor's motion for summary judgment that issues of fact exist regarding the Debtor's partnership interest. Testimony of Harry Miller, September 18, 2012 at 2:53 p.m. (noting that issues regarding partnership interest were "something we're going to have to deal with later"). Therefore, the court concludes that material issues of fact exist with respect to the partnership interest, the jewelry, and the proceeds of the disposition of other assets and whether the concealment was ongoing such that it occurred within one year of the filing. Summary judgment will be DENIED on the Plaintiff's claim pursuant to Section 727(a)(2).

### 2.      Section 727(a)(3)

11 U.S.C. § 727(a)(3) precludes a discharge if:

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the

22

circumstances of the case.

11 U.S.C. § 727(a)(3).

In this case the court finds that an issue of fact exists regarding whether the Debtor

maintained adequate records pertaining to the amounts received from the sale of Danka's assets,

including her home, her furnishings, her jewelry, her IRA account, and her car. He has no records

of funeral expenses and no records of the financial assistance he provided which was his

explanation of why his sister conveyed the house to him in 2006. Based on the HUD settlement

statement and the Debtor's statements regarding the money he earned from the sale of Danka's

home, it is unclear from the record how much money the Debtor received from that transaction.

The Debtor contends that the transactions related to Danka's assets are irrelevant if he had no

fiduciary duty. However, the court cannot make that finding at this stage of the proceedings. If the

court does find the existence of a trust at trial, an issue of fact exists regarding the sufficiency of the

records. Therefore, there are sufficient disputes of fact regarding whether the Debtor maintained

adequate financial records from which the state of his financial affairs could be ascertained. The

Debtor's motion for summary judgment regarding the Plaintiff's claim pursuant to Section

727(a)(3) will be DENIED.

### 3.      Section 727(a)(4)(A)

The Bankruptcy Code provides that a debtor shall receive a discharge from the court unless

"the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath

or account; . . ." 11 U.S.C. § 727(a)(4)(A). Courts in this Circuit have determined that to state a

claim pursuant to § 727(a)(4)(A), a plaintiff must demonstrate by a preponderance of the evidence

the following five elements:

(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) that the statement related materially to the bankruptcy case.

*Clippard v. Jarrett (In re Jarrett)*, 417 B.R. 896, 903 (Bankr. W.D. Tenn. 2009) (citing *In re Keeney*, 227 F.3d at 685).

Statements made by a debtor in his bankruptcy schedules, his personal statement of financial affairs, and at 341 meetings are all statements made under oath. *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008) (citing *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)) (other citations omitted). Whether a false statement under oath has been made pursuant to 11 U.S.C. § 727(a)(4)(A) is a question of fact. *In re Jarrett*, 417 B.R. at 903.

In this case the court concludes that there is a genuine issue of material fact regarding whether the omission of assets or interests on his schedules constitutes a false oath. The court concludes that there are disputes of fact regarding whether the Debtor made a false oath that the Debtor knew was false, that was made fraudulently, and that relates to his bankruptcy case. Therefore, the Debtor's motion for summary judgment on the Section 727(a)(4)(A) claim will be DENIED.

### 4.       Section 727(a)(5)

Section 727(a)(5) allows a court to deny a discharge where "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). With respect to a Section 727(a)(5) claim:

[t]he initial burden is on the Plaintiff to establish the loss or deficiency of assets by

> demonstrating that (1) at a time not too remote from the bankruptcy, the Defendant
> owned identifiable assets; (2) on the day that he commenced his bankruptcy case,
> the Defendant no longer owned the particular assets in question; and (3) his
> schedules and/or the pleadings in the bankruptcy case do not offer an adequate
> explanation for the disposition of the assets in question. The Plaintiff is not required
> to prove that the Defendant acted knowingly or fraudulently, as "noticeably lacking
> from a § 727(a)(5) is any element of wrongful intent or, for that matter, any
> affirmative defenses-- § 727(a)(5) simply imposes strict liability."

*Roberts v. Debusk (In re Debusk)*, No. 08-3015, 2008 WL 3904448, at *8 (Bankr. E.D. Tenn.

2008) (citing *Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr. W.D. Ky. 1999)

and quoting *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004)).

In this case, the court concludes that the Debtor owned identifiable assets which he

received from his sister – the house, the car, the contents of the IRA account. He no longer owns

those assets, and he has provided inconsistent explanations of their disposition. An issue of fact

exists regarding Plaintiff's 727(a)(5) claim. The Debtor's motion for summary judgment will be

DENIED regarding this claim.

**5.      Section 727(a)(6)**

Section 727(a)(6) provides for denial of discharge where:

> the debtor has refused, in the case –
>
> (A) to obey any lawful order of the court, other than an order to respond to a
> material question or to testify;
> (B) on the ground of privilege against self-incrimination, to respond to a material
> question approved by the court or to testify, after the debtor has been granted
> immunity with respect to the matter concerning which such privilege was invoked;
> or
> (C) on a ground other than the properly invoked privilege against
> self-incrimination, to respond to a material question approved by the court or to
> testify; . . .

11 U.S.C. § 727(a)(6). Section 727(a)(6)'s use of the word "refuse" requires "something more than

a mere failure to comply with a court order. . ." *Parker v. Banks (In re Banks)*, No. 11-3169, 2012

25

WL 1966138, at *2 (Bankr. N.D. Ohio May 31, 2012). In *In re Banks* the bankruptcy court noted that:

> Courts have determined that the showing necessary to deny a debtor a discharge for refusing to obey an order is the same as that for determining whether to hold a party liable for civil contempt. In a civil contempt proceeding, three elements must be established: "(1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite."

*Id.* at *2 (quoting *Yoppolo v. Freeman (In re Freeman)*, 293 B.R. 413, 415 (Bankr. N.D. Ohio 2002) and citing *Hazlett v. Gorshe (In re Gorshe)*, 269 B.R. 744, 747 (Bankr. S.D. Ohio 2001); *United States v. Richardson (In re Richardson)*, 85 B.R. 1008, 1011 (Bankr. W.D. Mo. 1988)).

The court concludes that there is no genuine issue of material fact regarding this claim. Nowhere in the Amended Complaint or in the evidence in the record provided by the Plaintiff is there evidence of an order of this court with which the Debtor has failed to comply. The court issued an order compelling the Debtor's disclosure of certain information, but no motion for sanctions was filed. There is no evidence that the Debtor had the information or documents and that he intended to violate the order. The court will GRANT the Debtor's motion for summary judgment with respect to this claim.

### 6.   Section 727(a)(7)

Section 727(a)(7) provides that a discharge may be denied where:

> The debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider; . . .

11 U.S.C. § 727(a)(7). A section 727(a)(7) claim requires that the debtor must have committed an act specified in one of the other relevant sections "in connection with a bankruptcy case

26

'concerning an insider.'" *Watman v. Groman (In re Watman)*, 458 F.3d 26, 31 n.3 (1st Cir. 2006).

An insider includes "a relative of the debtor or of a general partner of the debtor;" a "partnership in

which the debtor is a general partner;" a "general partner of the debtor;" or a "corporation of which

the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A).

To demonstrate the elements of a Section 727(a)(7) claim a debtor must: (1) prove that the

requisite elements of a Section 727(a)(2), (3), (4), (5) or (6) claim exist; (2) show that the actions

occurred either one year prior to the filing of the petition or during the case; and (3) demonstrate

that the actions were taken in connection with the bankruptcy case of an insider. *See Posnanski v.*

*Kosth (In re Kosth)*, No. 09-8131, 2012 WL 863634, at *7 (Bankr. C.D. Ill. Mar. 13, 2012).

In this case the Amended Complaint does not refer to any bankruptcy case of an insider of

the Debtor, nor is there any evidence presented relating to such a bankruptcy case. Therefore, the

third requisite element of a Section 727(a)(7) claim does not exist. This claim will be

DISMISSED.

### D.     The Plaintiff's Section 523(a) Claims

11 U.S.C. § 727 provides for discharge from debt unless excepted from discharge pursuant

to 11 U.S.C. § 523. 11 U.S.C. § 727(a)-(b). The Plaintiff is seeking a nondischargeable judgment

of at least $120,000 for the Debtor's wrongful conduct in obtaining and wasting the trust assets.

All of the Section 523 objections require the court to find that Danka never intended the Debtor to

have her property to use as he pleased. The facts surrounding the conveyance of this property are

contested and the court will address those disputes in the context of each Section 523(a) count.

1.      **Section 523(a)(2)**

a.      **Section 523(a)(2)(A)**

11 U.S.C. § 523(a)(2)(A) prohibits discharges of debt based on "(A) false pretenses, a false

representation, or actual fraud, other than a statement respecting the debtor's or an insider's

financial condition; . . ."   The Sixth Circuit has held that to demonstrate nondischargeability

pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor must prove four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the
> time, the debtor knew was false or made with gross recklessness as to its truth; (2)
> the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the
> false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir.

1998).

In this case the court must find that the Debtor made a misrepresentation. The Plaintiff

alleges that the Debtor must have represented to Danka that he would be a trustee for the Minors in

order for Danka to have been motivated to put his name on her house. The Plaintiff's evidence is

(1) the undisputed fact that Danka loved her sons more than anything else; (2) the notes and

affidavit of the hospice nurse describing a conversation with Donna and Debtor about a trust for

Danka's sons; and (3) the lack of evidence aside from his own testimony supporting Debtor's

claims that Danka's transfer was motivated by her sense of obligation to repay him. The Debtor

disputes any conversation regarding a trust occurred and offers a quitclaim deed which contains no

reference to a trust in support of his contention no trust existed. The court finds this creates a

genuine issue of fact, and the motion for summary judgment will be DENIED regarding the

Plaintiff's Section 523(a)(2)(A) claim.

28

**b.      Section 523(a)(2)(B)**

11 U.S.C. § 523(a)(2)(B) states in relevant part:

(a)   A discharge under section 727 . . . of this title does not discharge an individual
debtor from any debt − . . .

>       (2) for money, property, services, or an extension, renewal, or
>       refinancing of credit, to the extent obtained by −   . . . .
>
>       (B) use of a statement in writing −
>       (i) that is materially false;
>       (ii) respecting the debtor's or an insider's financial condition;
>       (iii) on which the creditor to whom the debtor is liable for such
>       money, property, services, or credit reasonably relied; and
>       (iv) that the debtor caused to be made or published with intent to
>       deceive; . . .

11 U.S.C. § 523(a)(2)(B).

To demonstrate a claim pursuant to 11 U.S.C. § 523(a)(2)(B) the Plaintiff must

demonstrate a statement made in writing. This requirement may be fulfilled by providing a written

statement that was " 'signed, adopted or used by the debtor.' " *Haney v. Copeland (In re*

*Copeland)*, 291 B.R. 740, 781 (Bankr. E.D. Tenn. 2003) (quoting *Insouth Bank v. Michael (In re*

*Michael)*, 265 B.R. 593, 598 (Bankr. W.D. Tenn. 2001)). A statement does not have to be prepared

by the defendant to satisfy the written statement requirement; however, he "must have either

created it, had it created, or allowed it to be 'published' by making it public or circulating it." *In re*

*Whisnant*, 411 B.R. at 564-65. Further, "a written statement respecting a debtor's financial

condition may be described as one representing the debtor's net worth, overall financial health, or

ability to generate income so as to enable an accurate assessment to be made of the debtor's

creditworthiness." *Midwest Comm. Fed'l Credit Union v. Sharp (In re Sharp)*, 357 B.R. 760, 765

(Bankr. N.D. Ohio 2007). Such statements may include loan applications. *Id.* Moreover, the

statement does not need to be a formal financial statement and may not even need to be signed by the defendant to satisfy the requirements of 11 U.S.C. § 523(a)(2)(B). *See Frankford Bank a/k/a Frankford Trust Co. v. Chryst (In re Chryst)*, 177 B.R. 486, 498 (Bankr. E.D. Pa. 1994).

In this case there is no evidence of a statement in writing regarding the Debtor's financial condition which caused Danka to transfer her property to the Debtor. The Debtor's motion for summary judgment will be GRANTED regarding Plaintiff's Section 523(a)(2)(B) claim as there is no issue of fact regarding the existence of a written statement.

### 2.      Section 523(a)(4)

With respect to defalcation while acting in a fiduciary capacity, the Sixth Circuit has provided that the preponderance of the evidence must establish: "(1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss." *Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009) (citing *Board of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007)). The Court further cautioned that "the term 'fiduciary capacity' is narrower here than it is in some other contexts: section 523(a)(4) covers only 'express' or 'technical trusts' and not trusts arising out of 'the very act of wrongdoing.'" *In re Patel*, 565 F.3d at 968 (quoting *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331, 55 S.Ct. 151 (1934)). In addition, "[a] 'defalcation' encompasses not only embezzlement and misappropriation by a fiduciary, but also the 'failure to properly account for such funds.'" *In re Bucci*, 493 F.3d at 639 (quoting *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir. 1985)). The Sixth Circuit has also:

> adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. Accordingly, the defalcation provision applies to "only those situations involving an express or technical trust relationship arising from

> placement of a specific res in the hands of the debtor." To establish the existence of
> an express or technical trust, a creditor must demonstrate: "(1) an intent to create a
> trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary."

*In re Bucci*, 493 F.3d at 639-40 (quoting *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d

176, 179 (6th Cir. 1997) and *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d

386, 391-92 (6th Cir. 2005)). Other courts in this Circuit have determined that evidence of a mere

power of attorney between family members is not sufficient to establish the narrow fiduciary

relationship contemplated by 11 U.S.C. § 523(a)(4) as interpreted by the Sixth Circuit. *See Meis v.*

*Meis (In re Meis)*, 200 B.R. 166, 169 (N.D. Ohio 1996) (citing *Bast v. Johnson (In re Johnson)*,

174 B.R. 537, 541-42 (Bankr. W.D. Mo. 1994)). In *In re Johnson* the bankruptcy court noted that

the narrow construction of "fiduciary" in Section 523(a)(4) pertains to relationships involving a

technical or express trust which:

> may be either one in which a formal document is executed which established the
> rights and duties of the parties, or one in which trust-type obligations are imposed
> pursuant to statute or common law. As a rule, the general fiduciary duty created by
> a power of attorney gives rise to an agency relationship, but does not give rise to the
> fiduciary capacity required by section 523(a)(4).

174 B.R. at 541.

As explained by the Sixth Circuit, "section 523(a)(4) covers only 'express' or 'technical

trusts' and not trusts arising out of 'the very act of wrongdoing.'" *In re Patel*, 565 F.3d at 968. The

Sixth Circuit has also clarified that "fiduciary," for purposes of section 523(a)(4):

> does not extend to implied trusts, which are imposed on transactions by operation
> of law as a matter of equity. Moreover, the requisite trust relationship must exist
> prior to the act creating the debt and without reference to it. State statutes which
> impose a trust ex-maleficio are not within the scope of [prior section 523(a)(4)]
> since such trusts only arise upon an act of misappropriation.

*Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-252 (6th Cir. 1982) (citing

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153 (1934)) (other citations

omitted).   *See also, In re Bucci*, 493 F.3d at 639 (noting that the Sixth Circuit has "refused to

extend [the defalcation provision] to constructive or implied trusts imposed by operation of law as

a matter of equity").

Thus, the court must determine whether the Plaintiff has demonstrated an issue of fact

regarding "the existence of an express or technical trust," and whether the Plaintiff has offered

some evidence to "demonstrate: '(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4)

a definite beneficiary.'" *In re Bucci*, 493 F.3d at 639-40 (quoting *In re Garver*, 116 F.3d at 179).

Further, "state law is important in determining when a trust relationship exists." *In re Johnson*, 691

F.2d at 251. *See also, Baker v. Wentland (In re Wentland)*, 410 B.R. 585, 597 (Bankr. N.D. Ohio

2009) (noting that "the determination of whether an express or technical trust exists is governed by

state law"). Under Tennessee law:

> [a] valid trust need not be in writing. It can be created orally unless the language of
> the written conveyance excludes the existence of a trust. However, when a party
> seeks to establish an oral trust, it must do so by greater than a preponderance of the
> evidence.
>
> The existence of a trust requires proof of three elements: (1) a trustee who holds
> trust property and who is subject to the equitable duties to deal with it for the
> benefit of another, (2) a beneficiary to whom the trustee owes the equitable duties
> to deal with the trust property for his benefit, and (3) identifiable trust property.

*Kopsombut-Myint Buddhist Center v. State Board of Equalization*, 728 S.W.2d 327, 333 (Tenn.

Ct. App. 1987).

The court finds that it is undisputed that there is no written trust document creating a trust

for the Minors that includes any of Danka's assets at issue in this proceeding. However, the court

concludes that a genuine issue of material fact exists regarding whether the Debtor was a trustee of

32

an express oral trust created by Danka for the benefit of the Minors which encompassed her assets, including her home, car, furnishings, jewelry, cash, and IRA funds. The Plaintiff has presented evidence in the form of the affidavit of Diane Case and the hospice records created at the time of the conveyance of Danka's house that suggests that Danka intended to place her home in a trust for the benefit of the Minors and that she deeded the property to the Debtor with the understanding that he would act as a trustee for the Minors' benefit. There is also the deposition testimony of one of Danka's sons. There are many disputes of fact regarding whether Danka's other assets were also intended to be placed in trust for the Minors. Although oral trusts must be proven by clear and convincing evidence, the court concludes that there are genuine issues of material fact surrounding the existence of such an oral trust. Debtor's motion for summary judgment on the § 523(a)(4) claim will be DENIED.

### 3.      Section 523(a)(6)

11 U.S.C. § 523(a)(6) states in relevant part:

> A discharge under section 727. . . of this title does not discharge an individual debtor from any debt – . . .
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. § 523(a)(6).

Whether a debt is dischargeable pursuant to 11 U.S.C. § 523(a)(6) is determined by analyzing federal law. *See e.g., J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 800-01 (Bankr. N.D. Ohio 2001) (citing *Call Federal Credit Union v. Sweeney (In re Sweeney)*, 264 B.R. 866, 870 (Bankr. W.D. Ky. 2001); *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 388 (Bankr. N.D. Ohio 1999)). 11 U.S.C. § 523(a)(6) provides that a debt that is *both* willful *and* malicious is

33

nondischargeable. *See* 11 U.S.C. § 523(a)(6). "[T]he judgment must be for an injury that is both

willful and malicious. The absence of one creates a dischargeable debt." *Markowitz v. Campbell*

*(In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). The U.S. Supreme Court has addressed the

meaning of "willful" within the context of § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 118

S.Ct. 974 (1998). As summarized by the Sixth Circuit:

> [t]he Court held that "willful" means "voluntary," "intentional," or "deliberate."
> As such, only acts done with the intent to cause injury – and not merely acts done
> intentionally – can cause willful and malicious injury.   The Court explained its
> holding by discussing the importance of context:
>
> > The word "willful" in (a)(6) modifies the word "injury," indicating
> > that nondischargeability takes a deliberate or intentional *injury*, not
> > merely a deliberate or intentional act that leads to injury. Had
> > Congress meant to exempt debts resulting from unintentionally
> > inflicted injuries, it might have described instead "willful acts that
> > cause injury." Or, Congress might have selected an additional word
> > or words, i.e., "reckless" or "negligent," to modify "injury."
> > Moreover, as the Eighth Circuit observed, the (a)(6) formulation
> > triggers in the lawyer's mind the category "intentional torts," as
> > distinguished from negligent or reckless torts. Intentional torts
> > generally require that the actor intend "the *consequences* of an act,"
> > not simply "the act itself."

*In re Markowitz*, 190 F.3d at 464 (quoting *Geiger*, 523 U.S. at 61-62, 118 S.Ct. at 977).

Following the lead of the Supreme Court in *Geiger*, the Sixth Circuit held that "unless 'the actor

desires to cause consequences of his act, or . . . believes that the consequences are substantially

certain to result from it,' he has not committed a 'willful and malicious injury' as defined under §

523(a)(6)." *In re Markowitz*, 190 F.3d at 464.

Proof of willful behavior must often be demonstrated through the use of circumstantial

evidence. *See In re Jones*, 276 B.R. at 802. The bankruptcy court in *In re Jones* noted that "willful"

behavior can "be indirectly established by the creditor demonstrating the existence of two facts:

34

(1) the debtor knew of the creditor's lien rights; and (2) the debtor knew that his conduct would cause injury to those rights." *Id.*

As to the element of malice, a malicious injury occurs "when a person acts in conscious disregard of their duties or without just cause or excuse." *In re Jones*, 276 B.R. at 803 (citing *Gonzalez v. Moffitt (In re Moffitt),* 254 B.R. 389, 396 (Bankr. N.D. Ohio 2000)). A finding of maliciousness does not require a determination of ill-will or specific intent. *See In re Trantham*, 304 B.R. at 308. However, malice requires the finding of a level of conduct beyond negligent or reckless behavior. *West Michigan Community Bank v. Wierenga (In re Wierenga)*, 431 B.R. 180, 185 (Bankr. W.D. Mich. 2010) (citation omitted); *see also, JP Morgan Chase Bank, NA v. Algire (In re Algire)*, 430 B.R. 817, 823 (Bankr. S.D. Ohio 2010); *Geiger*, 523 U.S. at 64, 118 S.Ct. 974. A creditor may prove the element of maliciousness by demonstrating that "(1) the debtor has committed a wrongful act, (2) the debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action." *In re Algire*, 430 B.R. at 823 (citing *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228 (6th Cir. 1991), abrogated on other grounds by *Geiger*, 523 U.S. 57).

In *National Sign and Signal v. Livingston* the district court explained that the § 523(a)(6) exception applies where the injury invades a creditor's legal rights. 422 B.R. 645, 653 (W.D. Mich. 2009) (citing *Steier v. Best (In re Best)*, 109 F. App'x 1, 6 (6th Cir. 2004)). The district court quoted the Sixth Circuit decision in *In re Best* noting:

> Section 523(a)(6)'s term "willful . . . means deliberate or intentional invasion of the legal rights of another, because the word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person." The conduct "must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice . . .

*Livingston*, 422 B.R. at 653 (quoting *In re Best*, 109 F. App'x at 6). The court in *Livingston* noted

that there are three elements that a creditor must demonstrate to state a claim under § 523(a)(6):

"(1) the debtor's conduct was willful and malicious, (2) it suffered an invasion of its legal rights or

to the legal rights to its property, and (3) the invasion was caused by the debtor's conduct." 422

B.R. at 653 (citing *CMEA Title Agency v. Little (In re Little)*, 335 B.R. 376, 383 (Bankr. N.D. Ohio

2005)).

 The court concludes that a genuine issue of material fact exists regarding whether the

Debtor's acts thwarting the Minors' interest in Danka's property were willful and malicious. If an

express trust existed, the Minors were beneficiaries and the Debtor was the trustee. There are

issues of fact regarding whether the house and car were specifically excluded from any trust

because they were given to Donna and to the Debtor. There is no dispute that the Debtor has

disposed of most of the assets that Danka owned without paying the proceeds to the Minors. There

are few, if any, records to substantiate whether those proceeds were used to preserve the assets. If

there was no trust, then the Debtor did not injure the Minors. The parties disagree regarding

Danka's intentions, but there are issues of fact regarding whether a trust was established and how

Danka's assets were to be distributed. These facts must be presented at trial for resolution by the

court. The Debtor's motion for summary judgment pertaining to the § 523(a)(6) claim will be

DENIED.

 **IV. Conclusion**

 For the reasons explained *supra*, the court will GRANT in part and DENY in part the

Debtor's motion for summary judgment. The court will GRANT the Debtor's motion for summary

judgment regarding Plaintiff's claims pursuant to 11 U.S.C. § 727(a)(6), 11 U.S.C. § 727(a)(7),

and 11 U.S.C. § 523(a)(2)(B). The court will DENY the Debtor's motion for summary judgment

with respect to Plaintiff's first count and his claims pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3),

(a)(4)(A), and (a)(5) and 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6).

A separate order will enter.

# # #